The next case today is James Garrey v. Sheila Creaton-Kelly, appeal number 21-1197. Attorney Nathanson, please introduce yourself for the record and proceed with your argument. May it please the court, this is David Nathanson for James Garrey. Patsy Harrell had an individual right to judge James Garrey's case and not be excluded from judging the case just because she was black, and James Garrey had a right to have Patsy Harrell not excluded from judging his case just because he's white. Batson and its progeny command all courts to quote unquote vigorously enforce both those The state court's framework was defective, using outdated framing, supplying improper rationales, improperly supplying the rationale, and contravening the record. And so with those defects, the SJC, the Supreme Judicial Court's decision violates both D-1 and D-2. Without those defects, Garrey prevails at step three of the Batson analysis, or he's entitled to a remand at minimum. So first, the judge improperly focused, began by improperly focusing on the fact that Garrey and Harrell were of different races. Then second, the judge improperly offered the rationale for the strike, that Harrell, not her husband, was a guidance counselor and that guidance counselors believe in sympathy and rehabilitation. The prosecutor's asserted rationale got Harrell's occupation wrong until the judge corrected it, and the Commonwealth admits that. That's on page 18 of their brief and a footnote. The prosecutor never articulated a rationale that connected guidance counselor until the judge supplied that rationale, again, improper. When defense counsel pointed out that sympathy was not a case-related rationale in this case, the judge then retreated to his initial observation about racial identity. And so this is his final ruling. I think it's important, so I'm going to quote it. It's, I also want the record to maintain that there's absolutely no minorities as either the victims, the witnesses, or the defendant in this case. I'm going to, I'm going to allow the challenge on that finding. The result... Can't you read that several ways? One, you could read it as contrary to powers, as saying that the fact that there isn't the is positive per se, which I think is the reading you're advocating, but can't you also read it as saying that in making my assessment as to whether it's plausible or reasonable that the prosecutor is giving me a straight answer on the reason they're giving, I'm looking at the prosecutor's motive and notice that they've got a, in common sense terms, a reduced motive to be improper and to give a false reason. And wouldn't that be a legitimate consideration of the circumstances? So I think there are multiple answers to that. And I'm going to try and give them in a coherent way. So first of all, it is imperative that we be true to what the transcript says here. And it's, that's not a hard task because it's only 12 pages. What your honor is pointing to is that the judge immediately prior to saying, I'm going to allow the challenge on that racial identity finding. Immediately prior to that, he simply restates what the prosecutor has said, which was adopting what the judge had said as to rationale. And so, and then the judge says, I'm going to allow it on the racial identity finding, right? So what we, at best, what we have here is a situation similar to the Supreme Court's decision in Snyder, in which there are two rationales. One may be proper, one may be not, but it's not a, it's not articulated clearly enough on the record that there can be any deference. But beyond that, regardless of whether the, I think that in itself suggests a contravention of both powers and supplying the rationale contravenes Batson itself and Johnson and you get de novo review. And so we're in the same shoes as Snyder there, that there's no deference owed. So, but let me just pause for a second, because I think, and I may not be understanding fully what you're saying, but I think you're running together two arguments, which is the judge volunteering a rationale and then the, but what I was trying to get you to focus on is the judge's observing and giving some weight to the fact that this was not a case in which there was a minority defendant or witness and a minority juror. And my question was, couldn't the judge have been citing that as a factor in assessing the credibility of the prosecutor? So I, I think that that kind of rationale turns the shield of Batson into a sword. And what I mean by that is that the racial identity between the defendant and the prospective juror that's being struck can increase the likelihood of an improper rationale, but it can't defeat the argument that there's an improper rationale. And it would be dangerous to put, particularly in these kinds of circumstances with this kind of framing by the judge, that I'm going to allow it on that finding. It would be very dangerous to allow that much weight, such to, to defeat the objection, to put that much weight on the lack of identity between the defendant and the juror. Let me ask you now about your second point. Okay. Yes.  Certainly, if the judge had turned to the prosecutor and said, why are you striking that witness? And the prosecutor said, because she's a police officer. I think that would have been sufficient for a judge at that point to say, I believe you. Instead, he said, because the husband's a guidance counselor or she's a guidance counselor. It's not quite so obvious. So the judge is testing and saying, well, here's what makes a guidance counselor, and the prosecutor is agreeing. So why isn't that just exploring the basis for the rationale rather than, you know, it's the basis for the non-discriminatory, non-racial justification put forward to see if it has anything behind it? He's not exploring it. I mean, he, the words out of his mouth were, I can tell you. I can tell you this is a sympathetic, you know, profession. And so that is supplying the rationale. So what the prosecutor did in just saying guidance counselor and refusing to be more explicit is not enough. And Miller-El makes this point pretty clearly. It has to be more than just, well, I'll just read it because this is what Miller-El says and it's to the point. If any facially neutral reason suffice to answer a Batson challenge, then Batson would not amount to much more than Swain. So it has to be more than guidance counselor. In a case where you say police officer, well, police officers are often testifying. It's incredibly obvious. But here, guidance counselor is not at all obvious. What we have, you know, sometimes, as in Serino, they're viewed as, you know, not good for defendants. And sometimes, as in Maxwell, they're viewed as good for defendants. So we need more articulation than that. And it could have been articulated, but the judge supplied it. And so when we get to step three, he's evaluating his own rationale rather than the prosecutor's. And that contravenes Batson. And I just want to point to there's additional things in the record that are important. There's the denials of racist motive. Batson says that's not good enough. There's the refusing to engage in the process. Johnson says that's evidence of a improper motive. There's the shifting of the rationale saying, oh, it's the the juror's husband. Wait a minute. I just realized it's it's the jurors herself. Let me interrupt you for a second, if I might, just to see if before you sit down, if Judge Lopez has any questions for you. Yes, I do have a question. Thank you. I think this picks up on a question that, in a sense, Judge Kayada was posing to you. I'd like to refer you, counsel, to the to the decision of the SJC. Do you have that available to you there? I do, Your Honor. I'm sure you I'm sure you know. Anyhow, this is the language that I'm asking you about. While you're searching for it, this is the language. And here we're dealing with the with step two of Batson. The SJC says, contrary to the defendant's assertion, the prosecutor's challenge of the prospective juror, because she was a guidance counselor, was not, per se, inadequate. In some circumstances, the juror's occupation alone may be facially insufficient. But it goes on to say, in other cases, it may be facially sufficient. It seems to me that the, what the SJC, in part, is saying is that all of this focus on the rationale that was provided by the judge to the effect that, well, a guidance counselor may be predisposed to be concerned about rehabilitation, may be more sympathetic, is kind of a sideshow because the very occupation that is being a guidance counselor suggests that rationale that the judge provided. And so, in deciding whether the step two determination of the SJC was unreasonable or an unreasonable application of the law, I mean, what are we supposed to do with that observation of theirs that perhaps just identifying this juror as a guidance counselor, you know, that was enough to establish that this is a facially neutral objection. So, beyond what I've already said, I think if you look at the record, the prosecutor either struggles or refuses to provide an answer when the judge says, can you be a little more explicit? And she never gives an answer. So, the judge himself was saying, convince me. And she didn't. She didn't provide an answer. She didn't answer his question. He answered his own question. So, then when you get to step three, he's not evaluating whether the prosecutor harbored a discriminatory intent. And all of that ties into the SJC just turning a blind eye to what's actually in the transcript. I've pointed it out in my brief, and I just implore the court to be true to the transcript, be true to the actual sequence of events of what happened here, and you will find a violation of Batson and his progeny. Thank you, Mr. Nathanson. I believe you have saved a minute for rebuttal. Thank you. Attorney Badway, please introduce yourself on the record to begin. Good morning. Assistant Attorney General Eva Badway for the respondent. This court should affirm the district court's denial of habeas relief. The SJC's adjudication of the petitioner's peremptory challenge claim was not an unreasonable application of Batson or Powers. The record clearly demonstrates that the prosecutor's challenge to the prospective juror was based on the fact that she was a guidance counselor, and I'd like to take the court through the exchange. The record reflects that the prosecutor initially stated that her reason for the challenge was that the veneer of person's husband was a guidance counselor, and I refer the court to page, the joint appendix 116. The actual page number is 118. The next reference to the reason for the prosecutor's challenge came from the judge, JA 117. He said the prosecutor challenged the veneer of person because she was a guidance counselor. Then, in further discussing the challenge, the judge stated that the prosecutor's reason for the challenge was the veneer of person's husband was a guidance counselor. Finally, upon hearing that the judge referred to the veneer of person's husband as the guidance counselor, the prosecutor on her own apologized for having misspoke and explained that the reason why she challenged the veneer of person was that she was a guidance counselor. The discussion then proceeded in light of the prosecutor's clarification, which the trial judge accepted. Given the prosecutor's apology and clarification, the SJC's determination of the facts should not be deemed error, much less unreasonable error under the deferential editor standard. Considering the totality of the relevant factors, the prosecutor did not exercise the preemptory challenge to exclude the prospective juror on the account of her race or engage in race-based purposeful discrimination. Discrimination against African-Americans veneer of persons in jury selection is impermissible regardless of the race of the petitioner. The SJC reasonably and correctly determined that the trial judge engaged in some preliminary discussion about the prosecutor's preemptory challenge. Then the trial judge permissibly asked the prosecutor to state her reason for the preemptory challenge and deem the reason legitimate in light of all the relevant circumstances. For this reason, I ask this court to affirm the denial of habeas relief. If this reason is good, and it may well be, but I'm having trouble thinking of any juror anywhere who I couldn't come up with some reason that would be equally good. I mean, name an occupation. You could always come up with some reason. So, if it's going to be the occupation alone or something like that, do we need the explanation that comes from the attorney who's exercising the challenge to be a little bit more case-specific? Well, Your Honor, according to Batson, once you state a race-neutral reason like an occupation, then that's the second step of the inquiry, right? And then there has to be further discussion. Under that rationale, if the prosecutor had said, well, that prospective juror is above average height, period. I think you'd be saying that's okay if the judge believes it. No, I think what has to happen is what happened here. There has to be some discussion with the trial judge and the defense counsel and the prosecutor. And I think it's really helpful, Your Honor, if we run through the transcript. Because in this case, what happened was the trial judge was not certain of the veneer a person's race. And it was defense counsel's insistence, once the peremptory challenge was exercised, that the veneer a person be brought back in to the court, or actually not let go is the proper way to say it. And so there was this discussion about whether the veneer a person was actually an African-American juror. And the trial judge says to the defense counsel, gee, I didn't even catch that she was an African-American. And the defense counsel says, well, I did. And so the court officer asked the veneer a person to stay, and she's not immediately dismissed. And then what the trial judge is completely in conformance with Batson and goes through the three steps. And the prosecutor initially did say it was the veneer a person's husband who was a guidance counselor and then admit she misspoke. But where the content of the transcripts clearly illustrates that what the trial did was in conformity with Batson. And we're here on habeas review. These fact findings by the SJC are entitled to deference, and they are not contrary to or an unreasonable application of Batson or powers. So give an example of a process of an occupation that wouldn't suffice. As long as it's race neutral, that's what question number two is about. It has to be a race neutral. I think there was a case that they talked about the hair and the mustache. So your example about height, sometimes physical appearance is enough. The explanation has to be race neutral. And then it's up to the trial judge to engage in further discussion. And on this record, I think you can see that defense counsel says, well, here on page A119. Oh, I can tell you that people's occupation, whether they're people who try and rehabilitate everybody and feel sorry for them and all that business can certainly be a legitimate challenge on behalf of the commonwealth or defendant. You don't think defense counsel, not in this case, your honor. Prosecutor, I fully agree with you, your honor. And that was the sole reason that I challenged the person. Is there anything else you'd like to say for the purpose of this record? And then defense counsel goes on to say, yes, your honor. I do believe that this juror is a minority juror and I do not see another minority juror in the veneer. And then there's a whole discussion about whether or not this person is a member of a minority group. And at one point, the trial judge brings the prospective juror up to bench and asks if she is a member of a minority and she responds in the affirmative. So this defense counsel was allowed to probe, was allowed to bring the juror's race up, was allowed to inquire about the prospective juror's race. And that is all in conformity with Batson. Judge Lopez, do you have any questions? Yes, I do. Thank you. Counsel, you've said a number of times that the trial judge acted in conformity with Batson. I would suggest to you that I cannot find any indication in this transcript that he even remotely addressed step three of Batson. Indeed, I think the with the issues, was the victim a minority, was the defendant a minority, that kind of thing. I mean, to me, that's really a standing inquiry. And the logic of that standing inquiry is that we don't even have to deal with the three steps of Batson. So that's the logic of his focus on the racial identity of victim, witness, defendant. And then if you go on and look at the transcript, I don't see any indication that he made the determination that is required by the third step of Batson, that there was no purposeful discrimination on the part of the prosecutor. Where in this transcript do you find a step three Batson determination? Your Honor, I would suggest a reading of the record where the trial judge's initial problem about race and why he questions or mentions, I should say, the race of the defendant and the victim is because he does not understand that the veneer person is a member of a minority group. And he admits that right from the beginning. So that is the underpinning of why the trial judge initially notes that neither the defendant- certainly relevant to a step one and step three Batson determination. But even acknowledging that, where in this record can you find any indication that the trial judge engaged with step three Batson determination? Please point me to the language. Okay. So I think that when we're talking about step three, it's when he actually goes and allows for him- he questions himself the race of the prospective juror to make the record complete. I think that's where the step three- where he still is uncertain that the defendant is a member of a minority group. And he asked defense counsel what he would like him to do. And defense counsel says that I would. And then he says, okay, I'll ask the question. So now I'm going to refer the court to page A123 of the joint appendix. And the court says, Hi, Ms. Harrell. Could you come a little closer to me, please? My name is Judge Tom Conley, and your questionnaire indicates that you're a guidance counselor for the Boston Public Schools. Yes. Right there in downtown government center? No. It's in Jamaica Plain. The court. Oh. The juror. English High School in Jamaica Plain. The court. Oh. In Jamaica Plain. Okay. The juror. Yeah. The court. Ms. Harrell, the only reason I asked this question is because of a ruling of the Supreme Judicial Court that encourages minorities to serve on juries. Okay? And the question is whether or not you are a minority person ethnically. It's a pretty stupid question to ask. I know that. But I just got to. I got to ask for it. I've got to ask for you. The juror. Yes. The court. Are you? Juror. Yes. Okay. Can you step back with the officer, please? And then the judge acknowledges that it wasn't the best phrased questions. I think your response to Judge Lopez is you're reading the entire discussion in the transcript. That is correct, Your Honor. And my point in doing that is to show Judge Lopez that by acknowledging that, yes, the juror, prospective juror, was a minority, the fact that she was a guidance counselor still allowed for the peremptory challenge. And that's step three, Your Honor. And what does the, what does the SJC do with that? Where do you find in the SJC's approach to step three of Batson? Where, other than, I'm looking at the SJC's decision. All I find is where the record shows that the judge gave the matter meaningful consideration, we will not second guess his decision. Are you saying that that simple reference to meaningful consideration and the extended portions of the transcript that you just read, that we're supposed to conclude that that was, that the SJC reasonably determined that the trial judge met the requirements of step three of Batson? Is that your argument? Yes, Your Honor. And I'd also point you to footnote two in the addendum, page 14, where the SJC actually cites to Powers v. Ohio and says the fact that the petitioner, the victim, and the witness were Caucasian was not dispositive of the issue because the petitioner is entitled to a jury selected by non-discriminatory criteria and prospective jurors are entitled to a discrimination-free jury selection process. So that's what I think. The last line that you the footnote to Powers indicates that the Massachusetts Supreme Judicial Court reasonably and correctly engaged in a Batson challenge analysis, and this court should deny this review. The Powers issue and the Batson issues are quite distinct, so I don't know why that reference to Powers says anything about the SJC's engagement with the Batson issue. Let me ask you this, and then I'll end my questioning. Would you agree that if we could not conclude that the SJC, if we were to conclude that the SJC's engagement with the third step of Batson reflected an unreasonable determination of the facts for an unreasonable application of the law, that that error alone would require us to grant the habeas petition? In other words, no problem at step one, no problem at step two, but step three, a big problem. Would you agree that that would require us to grant the habeas petition? No, Your Honor. You'd have to show a violation of an equal protection right, and this petitioner cannot do so with this record. So I think what you'd have to do is, I refer the court to Aspen v. Bissonnette, where they viewed the claim de novo and still denied habeas relief. I don't know. What does that mean? I mean, if Batson is premised on equal protection law, I mean, if we were to find that there'd been a failure to comply with Batson, why doesn't that answer the dispositive question? I don't understand what the additional question is. Well, Your Honor, I think what you're saying is that there was some kind of, that you're questioning the SJC's analysis, but the facts of the record remain the facts of the record. And here on habeas review, where this petitioner has not rebutted the presumptually correct facts with anything to suggest that the SJC's findings were unreasonable, then habeas, he's not entitled to habeas relief. And so you would just redo the Batson analysis that in a way that you find more in keeping with Batson. But I don't think he gets habeas relief. I don't think that this record supports any kind of a violation of equal protection. And for that reason, I think you would have to do like this court did in Aspen, because there is no way that this petitioner has rebutted the presumptually correct facts of the SJC. Well, you're not accepting the premise of my question, but all right, I will desist. Thank you. Thank you. Thank you. Attorney Nathanson, please reintroduce yourself on the record to begin your rebuttal time. Thank you, David Nathanson. I'll go right to the deference question that the respondent raised. We get to no deference in this case in two ways. One, there's a violation of powers. There's a violation of Johnson. There's a violation of Batson. Each of those violations gets us, and Judge Howard's opinion in Aspen says, each of those violations gets us to a de novo review. There's also a second way in which we get to no deference, which is that, as Judge Lopez suggested, the trial judge made no finding. He retreated to his powers error. And then what argued to the SJC that the judge needed to say, I find the prosecution has not proven purposeful discrimination? Did Gary argue that? Yes. So what I'd like to do is file a supplemental appendix that has those briefs so it's very clear, but Gary explicitly argued for de novo review before the SJC. And what the SJC said is that we will not second guess the trial judge. So it's clear they did not engage in their own fact-finding process. They said we will not second guess. So whatever the trial judge did, that's what the SJC did. In follow-up to Judge Kayada's question, was the step three issue raised in the petition, in the habeas petition before the district court? So the petition is very general. It violated Batson. We argued step three absolutely, both in the original and in the supplemental pleadings. Yes. I think you argued that the determination was incorrect. Yes. But I don't think you argued, and I stand to be corrected, but I don't recall you arguing that the defalcation here was that the judge never made a step three determination explicit or implicit or otherwise. Only in the supplemental findings, supplemental pleadings. That is where I made that argument. What I consistently argued is that Batson's step three was not engaged with and completed properly. If there are no further questions, I'll wrap up. If we assume the trial judge knew the law, he knew Batson, since it had been mentioned, is there any other way to read his finding other than as implicitly determined that there was no, that the prosecution had failed, that the defendant had failed to prove purposeful discrimination? Yes. And I think it's the way Judge Lopez is suggesting, which is that he says in his ultimate statement on the issue, the prosecutor has said guidance counselor, and he doesn't supply the rationale there. He previously supplied the rationale. The prosecutor has said guidance counselor. I also want the record to reflect racial identity, and I'm going to allow the challenge on that finding. So, at best, what you have there is, as I said, like the situation in Snyder, where there's two grounds, one which may or may not be proper, and one which is not. And once this court gets to review that, it's de novo, because we don't know whether the judge relied on a proper or improper, but in here, it's worse than Snyder, because the judge supplied that rationale. Thank you. Thank you. That concludes argument in this case. Sorry, I don't know. In the magistrate judge's second decision, she says, as I recall, that the step three Batson argument was waived. She says that. The district court judge, in a very brief decision, doesn't seem to pick up on that waiver point. The judge simply says, to the extent that there are any additional arguments that were raised, they are meritless, suggesting that he was looking at the issue on the merits. And then we get to the certificate of appealability issue. I think you succeeded before us in getting an expansion of the issues that would be considered before us. And my understanding is that, and I think this is reflected in the briefing, where I don't see any argument at all by the government that the step three Batson issue was somehow waived, that we have certified for appeal the entirety of the Batson analysis, so that by the terms of our own certificate, step three of Batson is very much in play. Is that how you understood the scope of this building? Yes, your honor. And that's why I proceeded the way I did. Had the Commonwealth, the respondent, raised a waiver argument, I would have responded. But I believe it is now fully before the court. And just substantively, this is one of those variations on a theme. The argument is that Batson was violated. The argument is that Batson step three was violated. Subtle variations on an argument do not waive an argument. Thank you. Thank you, counsel. That concludes argument in this case.